

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 12, 1998

Ms. Catherine A. Ghiglieri
Commissioner
Texas Department of Banking
2601 North Lamar Boulevard
Austin, Texas 78705-4294

Opinion No. DM-489

Re: Whether Government Code chapter 2256, the Public Funds Investment Act, applies to various funds administered by the Department of Banking (RQ-1105)

Dear Commissioner Ghiglieri:

The governing body of a state agency may, under Government Code section 2256.003(2), invest its public funds as chapter 2256, subchapter A permits. You ask how the term *public funds* is defined for purposes of the Public Funds Investment Act ("act"), Government Code chapter 2256,[1] and whether the Commissioner of Banking ("Commissioner") or the Department of Banking ("Department") may invest under the act certain funds in the control of the Commissioner or Department. (To be succinct, we will hereafter use the term *Commissioner* to refer to both the Commissioner and the Department.) We define the term *public funds* to include only funds that the state or a political subdivision collects in accordance with a general law and that will be used to benefit the public generally. Of the five funds you list, we conclude that four of them are not public funds that may be invested under the act. We also conclude the remaining fund is a public fund, but the Commissioner may not invest it under the act because the Commissioner lacks statutory authority to do so.

You further question whether funds that are deposited with the Texas Treasury Safekeeping Trust Company are invested under Government Code section 404.024 and thus beyond the act's reach. Because none of the five funds you list may be invested under the act, we do not consider this question.

Before we consider whether the act applies to particular funds, we will consider what funds may be invested under the act. We begin by looking at the act generally. Originally enacted in 1987, the act was intended to "broaden" certain governmental entities' "investment opportunities."[2]

---

[1]*See* Gov't Code § 2256.001.

[2]*See* Fiscal Note, C.S.H.B. 1488, 70th Leg., R.S. (1987). *But see* Gov't Code § 2256.024.

Thus, Government Code section 2256.003 authorizes, but does not require,[3] the governing body of a state agency, among other entities, to "purchase, sell, and invest" certain public funds "in investments authorized under [chapter 2256, subchapter A] in compliance with investment policies approved by the governing body and according to the standard of care prescribed by Section 2256.006."[4] As section 2256.003 directs, an entity may avail itself of the investment opportunities that subchapter offers if the entity has adopted a written investment policy that complies with section 2256.005. In addition, the investing entity must exercise the standard of care established in section 2256.006. Other sections in chapter 2256, subchapter A list authorized investments.[5]

The act permits a governmental entity to invest funds and funds under its control, but the act defines the term *funds* to mean only certain public funds.[6] For the purposes of our discussion here, the term *funds* includes only those "public funds in the custody of a state agency or local government that . . . the investing entity has authority to invest."[7] This office, in the past, has looked to statutes other than the act to determine an entity's authority to invest.[8] As you observe, the act does not define the term *public funds*. We will, consequently, seek to define it now.

We conclude that the term *public funds* denotes funds that belong to the Department, as an agent of the state, that the Department collected by virtue of some general law, and that are designated to a public purpose. We find that the phrase *public funds* has developed an accepted common-law meaning:[9]

> The term "public funds" means funds belonging to the state or to any county or political subdivision of the state; more specifically taxes, customs, moneys, etc., raised by the operation of some general law, and appropriated by the government to the discharge of its obligations, or for some public or

---

[3]Government Code section 2256.003 states that an entity listed in that section "may" purchase, sell, and invest as chapter 2256, subchapter A describes. The word *may* generally connotes an option. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 502 (1987) (contrasting *shall* and *may*).

[4]As originally enacted, the act did not apply to state agencies generally. *See* Act of May 27, 1987, 70th Leg., R.S., ch. 889, § 2, 1987 Tex. Gen. Laws 2985, 2985. The legislature extended the act to encompass state agencies generally in 1995. *See* Act of May 18, 1995, 74th Leg., R.S., ch. 402, sec. 1, § 2256.003(2), 1995 Tex. Gen. Laws 2958, 2959.

[5]*See* Gov't Code §§ 2256.009 - .020.

[6]*See id.* § 2256.003.

[7]*Id.* § 2256.002(3)(B).

[8]*See* Letter Opinion No. 96-074 (1996) at 2 (finding commissioners court's authority to invest county funds in Local Gov't Code § 116.112).

[9]*See* Gov't Code § 311.011 (directing construer of statute to read words and phrases consistently with common usage or with acquired meaning).

> governmental purpose; and in this sense it applies to the funds of every political division of the state wherein taxes are levied for public purposes. The term does not apply to special funds, which are collected or voluntarily contributed, for the sole benefit of the contributors, and of which the state is merely the custodian.[10]

Funds a state agency possesses merely as custodian, for the benefit of contributors, are not public funds.[11] Thus, bond revenues the Lower Colorado River Authority uses for public purposes are public funds,[12] while a private party's child-support payments to a state agency for transmittal to the private beneficiaries are not public funds.[13] Similarly, a Nebraska court determined that the state's "Second Injury Fund," funded by annual assessments from each insurance company doing business in the state,[14] held in trust by the state,[15] and used to pay employees with a preexisting partial disability who subsequently suffer a compensable injury,[16] is not a public fund.[17]

In the Commissioner's case, therefore, the Commissioner, acting for the Department (a state agency),[18] may purchase, sell, or invest in accordance with the act the Department's public funds or public funds in its control if the Commissioner is statutorily authorized to invest the funds and if the Commissioner has complied with other requirements set forth in the act. Whether particular funds are public funds and whether the Commissioner has statutory authority to invest particular funds are questions of law that are well-suited to our consideration.

---

[10]*Pokorny v. Wayne County*, 33 N.W.2d 641, 642 (Mich. 1948) (quoting 50 C.J. § 40, at 854); *accord Sebastian County Chapter of Am. Red Cross v. Weatherford*, 846 S.W.2d 641, 643 (Ark. 1993); *Sherard v. Nebraska*, 509 N.W.2d 194, 199 (Neb. 1993) (per curiam); *In re State Motor Fuel Tax Liab.*, 273 N.W.2d 737, 742 (S.D. 1978) (citing *Wood Bros. Constr. Co. v. Bagley*, 6 N.W.2d 397, 400 (Iowa 1942)); BLACK'S LAW DICTIONARY 1106 (5th ed. 1979); *see also Lower Colo. River Auth. v. Chemical Bank & Trust Co.*, 185 S.W.2d 461, 468 (Tex. Civ. App.--Austin), *aff'd*, 190 S.W.2d 48 (Tex. 1945).

[11]*See Navajo Tribe v. Arizona Dep't of Admin.*, 528 P.2d 623, 624-25 (Ariz. 1974) (en banc).

[12]*See Lower Colo. River Auth.*, 185 S.W.2d at 468.

[13]*See People v. Coe*, 342 P.2d 43, 46 (Cal. Dist. Ct. App. 1959).

[14]*See Sherard*, 509 N.W.2d at 199.

[15]*See id.*

[16]*See* Neb. Rev. Stat. § 48-128(1)(a), (2)(a).

[17]*See Sherard*, 509 N.W.2d at 199.

[18]*See* Gov't Code § 2256.003(2) (listing *state agency* as governmental entity that may invest under act).

We will now analyze the Department's authority under the act to invest each of the specific funds about which you ask. You list five funds about which you are specifically concerned:

1. Corporate and trust funds held pursuant to court-supervised receivership and liquidation of a bank or trust company pursuant to TEX. FIN. CODE ANN. Sections 36.001 et seq. . . . or TEX. REV. CIV. STAT. ANN. arts. 342a-7.001 et seq. . . . ;

2. Corporate and trust funds held pursuant to court-supervised receivership of a perpetual care cemetery pursuant to TEX. HEALTH & SAFETY CODE ANN. Section 712.0441(g) and TEX. CIV. PRAC. & REM. CODE ANN. [chapter 64];

3. Seized trust funds of a prepaid funeral contract seller held pursuant to TEX. FIN. CODE ANN. Sections 154.412 and 154.413;

4. The prepaid funeral contract guaranty fund established under TEX. FIN. CODE ANN. Section 154.351 and 7 T.A.C. Sections 25.17-25.20, operated and maintained by the advisory council created under TEX. FIN. CODE ANN. Section 154.355; and

5. The travel advance fund maintained by the Department.

### Funds of a liquidated, uninsured bank or a trust company in conservatorship

The first funds you describe are the funds of a failed financial institution that the Commissioner controls as receiver or conservator of the financial institution. In the unlikely event that the Commissioner liquidates a bank[19] not insured by the Federal Deposit Insurance Corporation,[20] for example, the Commissioner may serve as receiver.[21] Similarly, if the Commissioner declares a trust company insolvent,[22] an employee of the Commissioner may be

---

[19]See Fin. Code § 36.201 (authorizing Commissioner to close and liquidate state bank in certain circumstances).

[20]See id. § 36.003 (permitting Commissioner to tender state bank that has been closed for liquidation to Federal Deposit Insurance Corporation if bank's deposits were insured by that corporation on date of closing).

[21]See id. §§ 36.202, .203; see also Frank J. Skillern, Closing and Liquidation of Banks in Texas, 26 SW. L.J. 830, 833 (1972) (stating that FDIC has acted as receiver for all state banks closed in Texas in years preceding article).

[22]See V.T.C.S. art. 342a-6.104(b).

appointed conservator.[23] In either situation, the Commissioner "take[s] charge"[24] of the bank's or trust company's assets.

The funds of a liquidated, uninsured bank or trust company in conservatorship are not public funds and, consequently, may not be invested under the act. Unquestionably, the funds do not belong to the state.[25] Additionally, the Commissioner holds the funds merely as custodian, and the funds will not be used to discharge a public purpose. Consequently, even when the Commissioner holds the funds as conservator of a failed trust company, in which capacity the Commissioner may exercise any of the powers of the directors, managers, managing participants, officers, and shareholders of the trust company,[26] the Commissioner may not invest the funds under the act.

### Funds of a liquidated perpetual-care cemetery

Second, you ask about perpetual-care-cemetery liquidation funds. The Commissioner may report a perpetual-care-cemetery corporation's uncorrected violation of law to the attorney general, who must bring suit or quo warranto proceedings to forfeit the corporation's charter and dissolve the corporation.[27] You state that the dissolution necessarily entails putting the corporation in receivership and that occasionally the Commissioner is appointed receiver. As receiver, the Commissioner "take[s] charge" of the corporation's property.[28]

We conclude that these funds, like the financial institution's liquidation funds, are not public funds; consequently, the Commissioner may not invest them under the act. As you suggest, these funds probably belong to the cemetery and to those who have purchased burial plots there; unquestionably, they do not belong to the state. Furthermore, the funds will not be used to discharge a public purpose; rather, there is a duty to persons interred in the private cemetery to expend the

---

[23]*See id.* arts. 342a-6.102, -6.104(b)(2), -6.107, -6.108. You indicate that in fact one trust company currently is in conservatorship. *See Southwest Guar. Trust Co. v. Providence Trust Co.*, 970 S.W.2d 777, 781 n.7 (Tex. App.-- Austin 1998, pet. denied).

[24]*See* V.T.C.S. art. 342a-6.107(a); Civ. Prac. & Rem. Code § 64.031(1).

[25]Finance Code section 36.209 permits the receiver to deposit money collected on behalf of the bank estate only in certain depositories: (1) the TTSTC; or (2) an insured state bank "if the receiver, using sound financial judgment, determines that it would be advantageous to do so."

[26]*See* V.T.C.S. art. 342a-6.107(b). A conservator's powers may be limited, however, by the court order appointing the conservator and by the trust company's articles of incorporation. *See id.* arts. 342a-3.002(3)(B), -6.107(b).

[27]*See* Health & Safety Code § 712.0441(g); *see id.* § 712.001(2) (defining *Commissioner*).

[28]*See* Civ. Prac. & Rem. Code § 64.031(1).

funds to maintain the cemetery in perpetuity.[29]  Of course, if the Commissioner, as receiver, has obtained a court order permitting him or her to invest the perpetual-care-cemetery liquidation funds, the Commissioner may invest the funds, but not under the act.[30]

## Seized prepaid-funeral-contract funds

You ask third about seized prepaid-funeral-contract funds.  The Commissioner[31] may seize the prepaid-funeral money collected by a person whose permit to sell prepaid-funeral benefits is canceled[32] or who fails to renew a permit while the person has contracts outstanding.[33]  In addition, the Commissioner may seek to liquidate the business and to have the court appoint a receiver.[34]  We presume the Commissioner may be appointed receiver.  You inform us that the seized funds represent money paid or collected on trust-funded, prepaid-funeral contracts.[35]

Once again, we conclude that the prepaid-funeral-contract funds are not public funds that may be invested under the act.  Private individuals paid the funds to a private company to cover the costs of those individuals' funerals, relieving the survivors of the burden of paying funeral bills.  The Commissioner, as receiver, holds the funds merely as a custodian for the beneficiaries, and, you inform us, funds are withdrawn upon the death of a contract holder to pay funeral expenses. As we stated with reference to the perpetual-care-cemetery funds, the Commissioner, as receiver of the prepaid-funeral-contract corporation, is statutorily authorized to invest the seized funds if the Commissioner has obtained a court order authorizing the Commissioner to do so.[36]  The Commissioner's investment authority under a court order does not make the funds public funds for purposes of the act, however.

---

[29]*See* Health & Safety Code § 712.021(f)(1).

[30]Civil Practice and Remedies Code section 64.034, part of a chapter providing for receivership generally, permits a receiver to invest for interest any funds he or she holds, but only if the receiver has obtained a court order to which all parties have consented.

[31]*See* Fin. Code § 154.002(2) (defining *Commissioner*).

[32]*See id.* § 154.109 (providing grounds for cancellation or refusal to renew permit).

[33]*See id.* § 154.107 (requiring permit holder to renew permit until outstanding contracts are discharged).

[34]*See id.* § 154.414.

[35]*See also id.* subch. F.  You do not mention that prepaid funeral benefits also may be insurance funded.  *See id.* subch. E.

[36]*See* Civ. Prac. & Rem. Code § 64.034.

## Prepaid-funeral-contract guaranty fund

You ask next about the prepaid-funeral-contract guaranty fund. Finance Code chapter 154, subchapter H creates a guaranty fund, amassed from assessments on permit holders,[37] to ensure that purchasers of prepaid-funeral-benefits contracts receive the benefits for which they paid.[38] The Commissioner is responsible to maintain the fund,[39] and the chapter also creates an advisory council to supervise the operation and maintenance of the guaranty fund.[40]

In our opinion, monies in the prepaid-funeral-contract guaranty fund are not public funds and therefore may not be invested under the act. In particular, these monies are collected only from entities selling prepaid-funeral-benefits contracts. The funds are not tax revenues. Additionally, only purchasers of prepaid-funeral-benefits contracts (or rather the survivors of the purchasers) may benefit from the funds if the seller has gone out of business. Consequently, we believe a Texas court would analyze the guaranty fund similarly to the Supreme Court of Nebraska's analysis of that state's Second Injury Fund in *Sherard v. Nebraska*.[41] The *Sherard* court determined that the Second Injury Fund is not a public fund for three apparent reasons. First, monies in the Second Injury Fund are raised by collecting annual assessments the state director of insurance levies on each insurance company doing business in the state.[42] Thus, the fund is not amassed through taxation or by a general law applicable to the public at large.[43] Second, the funds are used to compensate employees, hired with a preexisting permanent partial disability, who subsequently suffer another compensable injury.[44] Thus, it may be drawn upon only to benefit particular individuals.[45] Finally, the fund is held in trust by the state treasurer.[46] In our view, the fact that the guaranty fund about which you ask may or may not be held in trust is not dispositive where the fund is not amassed through general laws and where the fund benefits so few individuals.

---

[37]*See* Fin. Code § 154.352.

[38]*See id.* § 154.351.

[39]*See id.*

[40]*See id.* § 154.355, .355(a).

[41]*Sherard*, 509 N.W.2d at 199.

[42]*See id.*; Neb. Rev. Stat. § 48-128(2)(a).

[43]*See Sherard*, 509 N.W.2d at 199 (in part citing *Allen v. City of Omaha*, 286 N.W. 916 (1939)).

[44]*See* Neb. Rev. Stat. § 48-128(1)(a), (2)(a).

[45]*See Sherard*, 509 N.W.2d at 199.

[46]*See id.*; Neb. Rev. Stat. § 48-128(2)(a).

### Travel-advance fund

Finally, we consider monies appropriated to fund travel advances that the Commissioner currently has deposited in a checking account at a state depository. Clearly, these are public funds for purposes of the act. Determining whether travel-advance funds may be invested under the act involves at least one additional consideration, however: whether the Commissioner is statutorily authorized to invest the funds.[47]

Because we conclude that the Commissioner is not statutorily authorized to invest travel-advance funds, we must also conclude that travel-advance funds are not funds that may be invested under the act. We find no statutory authority for the Commissioner to invest the Department's funds generally[48] or these funds in particular,[49] and you do not cite any. Section 2256.003 of the act cannot itself function to statutorily authorize the Commissioner to invest the funds because it applies only to funds, which, according to the act's definition, a governmental entity must be authorized by statute to invest. Without the requisite statutory authority to invest the Department's funds, the Commissioner may not invest them under the act.[50]

---

[47]*See* Gov't Code § 2256.002(3)(B).

[48]*See, e.g.,* Fin. Code ch. 12.

[49]*Cf.* Local Gov't Code § 116.112 (authorizing commissioners courts to invest county funds); Letter Opinion No. 96-074 (1996) at 2.

[50]As a state agency, the Department possesses only those powers expressly delegated to it as well as those powers necessarily implied. *See Tri-City Fresh Water Supply Dist. No. 2 v. Mann,* 142 S.W.2d 945, 946 (Tex. 1940); *Harris County Water Control & Improvement Dist. No. 58 v. City of Houston,* 357 S.W.2d 789, 795 (Tex. Civ. App.-- Houston 1962, writ ref'd n.r.e.).

You state that some agencies, which you have apparently polled for guidance in your own situation, have concluded that their own travel-advance monies are invested as authorized by Government Code section 404.024 and therefore subject to investment under the act, even though the comptroller does not have custody of the funds. You question these agencies' interpretation of the act. This issue is irrelevant to resolving your question, so we do not discuss it.

## S U M M A R Y

The Public Funds Investment Act, Government Code chapter 2256, subchapter A, applies only to certain public funds. *Public funds* are those funds belonging to the state or a political subdivision that the state has collected in accordance with a general law and that will be used to serve the public interest generally. A governmental entity may invest under the act only public funds that, among other things, the entity is authorized to invest by a statute other than the act.

The Commissioner of Banking may not invest under the act funds of a liquidated, uninsured bank or a trust company in conservatorship because the funds are not public funds. Likewise, the Commissioner may not invest under the act funds of a liquidated perpetual-care cemetery. The Commissioner may not invest under the act seized prepaid-funeral-contract funds, nor may the Commissioner invest under the act money in the prepaid-funeral-contract guaranty fund. Finally, the Commissioner may not invest travel-advance funds under the act because the Commissioner does not have statutory authority to do so.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General